UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC X. RAMBERT, | : CIVIL ACTION NO. 3:CV-15-0320 |
| | : |
| Plaintiff | : (Judge Nealon) |
| | : |
| v. | : |
| | : |
| DEPT OF CORRECTIONS, et al., | : |
| | : |
| Defendants | : |

## MEMORANDUM

### I. Background

Eric X. Rambert, an inmate confined in the State Correctional Institution, Coal

Township, (SCI-Coal Township), Pennsylvania, filed the above-captioned civil rights

complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are the following

seven Philadelphia County employees: Jane Doe, Clerk of Court; Ronald D. Castille,

former District Attorney and Chief of the Career Criminal Program; Seth Williams,

District Attorney; Daniel McElHatton, Assistant District Attorney; John Doe, Special

Investigator for the Career Criminal Program; Jules Epstein, former Public Defender;

and Dennis T. Kelly, Deputy Defender of the Defenders Association; the following

four SCI-Coal Township employees: Records Supervisors Barlow, Kodack and Fobia

and Business Manager Nancy Wilson; and the following two Department of

Corrections employees: John Wetzel, Secretary of Corrections and Andrew Filkosky, Open Records Supervisor.

Along with the filing of his complaint, Rambert submitted an application to proceed in forma pauperis under 28 U.S.C. § 1915. (Doc. 5).

A court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir.2008); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. at 94 (citations omitted). The Court has conducted an initial screening of Plaintiff's complaint, and for the reasons set forth below, Plaintiff's motion to proceed in forma pauperis will be granted, and the Plaintiff's complaint will be dismissed as

2

frivolous.  Plaintiff, however, will be given an opportunity to file an amended

complaint as to his denial of access to the courts and retaliation claims only.

## II. Complaint

Plaintiff states that [o]n June 2, 1983 [he] was arrested in Philadelphia County

and he was a seventeen (17) year old kid and certified as an adult." (Doc. 1,

complaint at 6).  He claims that he was "illegally selected and included in the

Philadelphia's makeshift Career Criminal Program that was sanctioned by Defendant

Ronald D. Castille, former District Attorney and Chief of the Career Criminal

Program" in which Plaintiff claims "Defendant John Doe, Special Investigator gave

false information that the Plaintiff had either three strikes or two strikes (convictions)

to sanction the Plaintiff as a Career Criminal and placed in the Career Criminal

Program which was fraud on the Court because the Plaintiff had no prior convictions."

Id.  Thus, Plaintiff alleges that "the Career Criminal Program tribunal lacked subject

matter jurisdiction over Plaintiff and only had jurisdiction because of the false

information that the Plaintiff who was a juvenile was either a three striker or two

striker."  Id.  He claims that as a result of this "egregious fraud", the Defendants

"added 15 years to Plaintiff's sentence without statutory authority by the sentencing

judges" and he was subjected to "false imprisonment when the Plaintiff was placed in

a Career Criminal Program" and "subjected to definite mandatory sentencing scheme." Id.

Plaintiff claims that on July 29, 2010, he filed a Post Conviction Relief Act ("PCRA") petition in the Philadelphia County Court, challenging the decision to try Plaintiff as a career offender. Id. He claims that the PCRA petition is still pending. Id.

With respect to the SCI-Coal Township Defendants, Plaintiff states that on October 26, 2014, he "filed for indigent status with Defendant Nancy Wilson and was denied." (Doc. 1, complaint at 7). The Plaintiff states that he "initiated a grievance that was processed probably because by right [Plaintiff] had no claim to get the status at that time so the Plaintiff withdrew that grievance." Id.

On November 1, 2014, "Defendant Wilson declared the Plaintiff indigent for legal materials, legal postage, and hygiene products and asked the Plaintiff what he wanted, never issuing any form for the Plaintiff to fill out." (Doc. 1, complaint at 7). Plaintiff states that once he "wrote out what he wanted, Wilson then sent a form to fill out and told Plaintiff to get with the RHU Lieutenant for hygiene products." Id. The Plaintiff states that he "did not receive any hygiene products until November 19, 2014, 18 days later." Id. Plaintiff further alleges that "Defendant Wilson obstructed the

4

Plaintiff's outgoing legal mail in retaliation for Plaintiff's previous DC-804 Grievance # 534337 that was later withdrawn by the Plaintiff because it was premature to file or be granted indigent status under the policy." Id. Specifically, Plaintiff states that Defendant Wilson "had the mail room return his out going legal mail dated "11/9/14, 11/1/0/14, 11/12/14 and 11/13/14 for insufficient funds, clearly a retaliatory act because the Plaintiff was suing her co-workers and the previous grievance # 534337 initiated 10/26/14 after she denied the Plaintiff's first indigent status request." Id.

Finally, with respect to the DOC Defendants, Plaintiff states that "on November 3, 2014, Defendant Wetzel re-issued Department Policy DC-ADM 005 'Collection of Inmate Debts' in which he announced that the only way that deductions are made is if the DOC is in possession of a court order or sentencing transcript." (Doc. 1, complaint at 3). Plaintiff claims that on November 5, 2014, he "wrote directly to Defendant Wetzel concerning his announcement in the re-issue policy DC-ADM 005 which is of great concern because the only binding legal document is the Court's Order and not the sentencing or DC-300B Court Commitment Form" and that "Plaintiff was being denied a copy of his Court order reflecting the Judge's actual sentencing scheme in the Plaintiff's case, Com v. Rambert, CP-51-CR-0625331-1983 because the Plaintiff was deemed a Career Criminal and tried in the Career Criminal Program as a juvenile in violation of statutory authorization by the legislatures." Id.

Thus, Plaintiff requested Wetzel provide him with a copy of the Court's Order." Id.

Plaintiff claims that when he received no reply from Wetzel he "filed a complaint on

December 5, 2014 with the DOC Office of Professional Responsibility against

Defendant Wetzel and not surprising has not been giving a reply." Id.

Plaintiff filed the instant action in which he seeks damages from Defendants

"for everyday since June 2, 2008, he is serving based on [Defendants'] illegalities of

aggregating a definite mandatory sentencing concealing the truth in sentencing

scheme of the Judge's sentencing order, or the examination of the DC-300B Court

Commitment Form", as well as damages for "refusing to correct the false

imprisonment after being made aware that it is illegal to aggregate a definite

mandatory sentence under Career Criminal Status because that sentence is already

enhanced for punishment and refusal to follow the propr statutes set by the legislatures

and the Supreme Court" and for the "deliberate false imprisonment under fraudulent

concealment where the Defendants knew or should have known that a 17 year old kid

was not a three time or two time convicted felon." (Doc. 1, complaint at 11). Plaintiff

further seeks "immediate correction of his sentence by the DOC Defendants to reflect

June 2, 2018 as the max date and not the June 2, 2033 maximum sentence they

illegally aggregated" or to "release him." Id. Finally, Plaintiff seeks damages from

6

the Philadelphia County Clerk of Court for "failing to turn over a copy of the Court's

Sentencing Order", as well as "damages from Defendant Wilson for denial of access

to the Court that caused the Plaintiff to lose a significant right to access the Court for

redress." Id.

## III.   Discussion

In order to state a viable section 1983 claim, a plaintiff must plead two essential

elements: (1) that the conduct complained of was committed by a person acting under

color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege,

or immunity secured by the Constitution or laws of the United States.  Groman v.

Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse,

920 F.2d 1135, 1141-42 (3d Cir. 1990).  "To establish liability for deprivation of a

constitutional right under § 1983, a party must show personal involvement by each

defendant." Keys v. Carroll, 2012 U.S. Dist. LEXIS 137930, *26 (M.D. Pa. 2012)

(Caputo, J.) (citing Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) ("Because

vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has

violated the Constitution.")); see Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d

Cir. 2010).

With respect to Plaintiff's request for compensation for illegal aggregation of his sentence, it is well-settled that prisoners cannot use § 1983 to challenge the fact or duration of their confinement or to seek immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475 (1973). The United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S.477 (1994). "The complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

Because there is no indication of record that there has been a successful prior adjudication pertaining to Plaintiff's alleged unlawful conviction or sentence, it is appropriate to dismiss the claim for damages as legally frivolous. Plaintiff cannot, under Heck, maintain a cause of unlawful imprisonment until the basis for that imprisonment is rendered invalid. See also Mitchell v. Department of Corrections,

8

272 F. Supp. 2d 464, 473 (M.D. Pa.2003) (holding that the favorable termination rule of Heck, under which a state inmate must secure a determination of invalidity of his conviction or sentence before seeking § 1983 damages for unconstitutional conviction or confinement, applies to suits by prisoners who no longer are in custody, even though federal habeas relief no longer is available due to the prisoner's release).  To the extent that Plaintiff states that he currently has a PCRA petition pending since July, 2010, in the Philadelphia County Court, which has been inordinately delayed, such challenge is more appropriately made in the Philadelphia County Court of Common Please, or in the United States District Court for the Eastern District of Pennsylvania.[1]

To the extent that Plaintiff asserts a claim for monetary damages pursuant to 42 U.S.C. 1985, alleging that all Defendants conspired to "keep Plaintiff falsely

---

[1]Additionally, the Court notes that the allegations against the following Philadelphia County employees named in Plaintiff's complaint: Jane Doe, Clerk of Court; Ronald D. Castille, former District Attorney and Chief of the Career Criminal Program; Seth Williams District Attorney; Daniel McElHatton, Assistant District Attorney; John Doe, Special Investigator for the Career Criminal Program; Jules Epstein, former Public Defender; and Dennis T. Kelly, Deputy Defender of the Defenders Association are more appropriately filed in the United States District Court for the Eastern District of Pennsylvania for the convenience of the parties and in the interests of justice, since it appears that the Defendants and the incidents complained of are within that district. See 28 U.S.C. § 1391(b).

imprisoned", the favorable termination rule set forth in Heck has been applied to

claims brought under sections 1985 and 1986. Cook v. City of Phila., 179 F. App'x

855, 859 (3d Cir. 2006) (finding that plaintiff's section 1985 was barred by Heck)

(citing Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989); Jones v. City

of Phila., 491 F. Supp. 284, 288 (E.D. Pa. 1980)); Kennedy, 2015 U.S. Dist. LEXIS

31722, *3 (citing McQuillion v. Schwarzenegger, 369 F.3d 1091, 1097 n.4 (9th Cir.

2004)); Stubbs v. City of Wilkes-Barre, 2011 U.S. Dist. LEXIS 51893, *6 (M.D. Pa.

2011) (Smyser, M.J.) ("Although Heck dealt with a 42 U.S.C. § 1983 claim, the

reasoning of Heck has been applied to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986

claims as well."), adopted by, 2011 U.S. Dist. LEXIS 51957 (M.D. Pa. 2011) (Conner,

J.); see Saunders v. Bright, 281 F. App'x 83, 84 n.4, 85 (3d Cir, 2008). Heck "delays

what would otherwise be the accrual date of a tort action until the setting aside of an

extant conviction which success in that tort action would impugn." Heck, 512 U.S.

486-87. Once again, because there is no indication that there has been a successful

prior adjudication pertaining to Plaintiff's alleged unlawful conviction or sentence, it

is appropriate to dismiss Plaintiff's conspiracy claim for damages as legally frivolous.

Although a writ of habeas corpus is not explicitly raised in Plaintiff's filings,

this Court construes Plaintiff's request for "immediate correction of his sentence by

the DOC Defendants to reflect June 2, 2018 as the max date and not the June 2, 2033

maximum sentence they illegally aggregated" or to "release him" as habeas claims

pursuant to 28 U.S.C. § 2254.

A person in state custody may file an application for a writ of habeas corpus

challenging the fact or length of his confinement under section 2254.  28 U.S.C. §

2254.  "Congress has determined that habeas corpus is the appropriate remedy for

state prisoners attacking the validity of the fact or length of their confinement, and that

specific determination must override the general terms of § 1983."  Preiser v.

Rodriguez, 411 U.S. 475, 490, 499 (1973) (determining that challenges to the fact or

duration of physical confinement, or seeking an immediate or speedier release from

that confinement is the heart of habeas corpus); Leamer v. Fauver, 288 F.3d 532, 542

(3d Cir. 2002) (holding, "when the challenge is to a condition of confinement such

that a finding in plaintiff's favor would not alter his sentence or undo his conviction,

an action under § 1983 is appropriate").  Consequently, to the extent Plaintiff is

seeking habeas relief pursuant to section 2254, it will be dismissed without prejudice.

Finally, with respect to Plaintiff's claim for damages from Defendant Wilson

for "denial of access to the Court that caused the Plaintiff to lose a significant right to

access the Court for redress", it is well-established that inmates have a fundamental

11

constitutional right of access to the courts. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

However, the right is limited to direct criminal appeals, habeas petitions and civil

rights actions. <u>Id</u>. at 354. Within those areas, the right of access to the courts "requires

access to adequate law libraries or adequate assistance from persons trained in the law

for filing challenges to criminal sentences, both direct and collateral, and civil rights

actions." <u>Allah v. Seiverling</u>, 229 F.3d 220, 224 (3d Cir.2000). But an inmate has no

independent right to such facilities or programs. <u>Lewis</u>, 518 U.S. at 351. Rather, the

right of access to the courts merely ensures that inmates possess "the capability of

bringing contemplated challenges to sentences or conditions of confinement before

courts." <u>Id</u>. at 356.[2] In <u>Christopher v. Harbury</u>, the Supreme Court held that to pursue

a claim for an access to the courts violation an inmate must establish that the denial of

access caused was an actual injury to a nonfrivolous or arguable claim. 563 U.S. 403,

---

[2]The right of access to the Court

> does not guarantee inmates the wherewithal to transform
> themselves into litigating engines capable of filing
> everything from shareholder derivative actions to
> slip-and-fall claims. The tools it requires to be provided are
> those that the inmates need in order to attack their sentences,
> directly or collaterally, and in order to challenge the
> conditions of their confinement. Impairment of any other
> litigating capacity is simply one of the incidental (and
> perfectly constitutional) consequences of conviction and
> incarceration.

<u>Lewis</u>, 518 U.S. at 355.

415 (2002).  An actual injury must be pled regardless of whether the inmate is alleging

a denial of access to the courts for an anticipated future claim or one that was lost or

impeded because access was denied.  Id. at 414–15.[3]  "To that end, prisoners must

satisfy certain pleading requirements: The complaint must describe the underlying

arguable claim well enough to show that it is 'more than mere hope,' and it must

describe the 'lost remedy.' " Id.

　　Furthermore, a plaintiff must demonstrate intent on the part of the defendants.

The Third Circuit has explained:

> [A] denial of access claim is available where the state officials
> **"wrongfully and intentionally** conceal information crucial to a person's
> ability to obtain redress through the courts, and so **for the purpose of**
> **frustrating that right**, and that concealment, and the delay engendered
> by it substantially reduce the likelihood of one's obtaining the relief to

---

[3]Claims for denial of access to the courts may arise from the frustration or
hindrance of "a litigating opportunity yet to be gained" (forward-looking access
claim) or from the loss of a meritorious suit that cannot now be tried
(backward-looking claim).  Christopher, 536 U.S. at 412–15. As part of the
requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim
had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also
Christopher, 536 U.S. at 415. The plaintiff must describe this "predicate claim ... well
enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the
underlying claim is more than hope." Christopher, 536 U.S. at 415. The complaint
should "state the underlying claim in accordance with Federal Rule of Civil Procedure
8(a) just as if it were being independently pursued, and a like plain statement should
describe any remedy available under the access claim and presently unique to it." Id.
at 417–18.

which one is otherwise entitled."

Gibson v. Superintendent of NJ Dept. Of Law and Public Safety-Division of State Police, 411 F.3d 427, 445 (3d Cir. 2005) (emphasis in original) (citations omitted).

Accordingly, in order to support his access to the courts claim, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants had the requisite intent to deny his constitutional right of access to the courts. Here, Plaintiff alleges that his legal mail was returned to him for insufficient funds. However, his allegations concerning actual injury are too vague to state a claim for relief. Plaintiff has not pleaded any facts showing that he lost the chance to pursue a nonfrivolous claim. As a result, Plaintiff has failed to set forth a claim of denial of access to the courts, and this claim will be dismissed. However, Plaintiff will be given an opportunity to file an amended complaint as to his access to the courts claim. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir.2007).[4]

## IV. Conclusion

---

[4] To the extent that Plaintiff claims that Defendant Wilson had his mail returned to him in retaliation for Plaintiff's filing of grievances, Plaintiff may elaborate further on that claim in his amended complaint.

14

For the reasons stated above, all of Plaintiff's claims, with the exception of denial of access to the courts and retaliation, will be dismissed, but Plaintiff will be given an opportunity to file an amended complaint as to these claims. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Young v. Keohane, 809 F.Supp. 1185, 1189 (M.D. Pa.1992). An appropriate order will follow.

Dated: June 26, 2015                         /s/ William J. Nealon
                                             **United States District Judge**